### THE SCOVILL MANUFACTURING COMPANY vs. EDWARD G. KILDUFF, MAYOR, ET ALS.

Third Judicial District, New Haven, June Term, 1906.
BALDWIN, HAMERSLEY, HALL, PRENTICE and THAYER, Js.

The established water rates of the city of Waterbury, under which the plaintiff was supplied with water, ran from three cents per hundred gallons for a daily average of less than 500 gallons, to one half cent per hundred gallons where the average daily use exceeded 10,000 gallons.    The plaintiff's manufacturing plant, which was contained in one inclosure, comprised several buildings connected with each other, to most or all of which water was supplied by means of a large distribution pipe owned and laid by the plaintiff upon its premises, and connected in turn with the street mains. Of the eight connections, seven had been supplied with meters by the plaintiff at its own expense, and one by the city.    All the water used was for the same general purpose, and the total quantity greatly exceeded a daily average of 10,000 gallons. *Held* that the plaintiff should be charged a uniform rate determinable by the average daily consumption of all the water used in the entire plant, and not such varying and higher rates as might be applicable to the smaller quantities of water which were consumed in each building or which passed through each of the several meters.

Whether a different rule would apply where water was furnished to separate closes owned by the same proprietor, or for different uses upon the same close, *quære*.

Submitted on briefs June 8th—decided July 30th, 1906.

SUIT to restrain the defendants, as commissioners of public works of the city of Waterbury, from shutting off

or diminishing the plaintiff's water supply from the city reservoirs, brought to and tried by the District Court of Waterbury, *Cowell, J.,* upon an agreed finding of facts; judgment for the defendants, and appeal by the plaintiff. *Error; judgment to be entered for plaintiff.*

*Lucien F. Burpee* and *Terrence F. Carmody,* for the appellant (plaintiff).

*John P. Kellogg,* for the appellees (defendants).

BALDWIN, J. Waterbury is supplied with water by works owned and managed by the city through a board of commissioners of public works. Pursuant to its charter, the following scale of prices and terms to consumers has been established by the city :—

" For any purpose where the rate is determined by the quantity used, where the average daily use is less than 500 gallons, for each 100 gallons                                         .03

" For the quantity in excess of 500 gallons up to 2,000 gallons daily average, for each 100 gallons                         .02

" For the quantity in excess of 2,000 gallons up to 10,000 gallons daily average, for each 100 gallons         .01

" For the quantity in excess of 10,000 gallons daily average, such rates as shall be fixed by the commissioners, not less per 100 gallons than                                         .0½

" But no use of water shall be allowed in any separate building for a less rate than that of $5 per annum.

" The commissioners reserve the right to vary from the foregoing list when the amount of water used is greater than is usually required for the use specified. When water is used for purposes not specified in the foregoing tariff, the rate shall be fixed by the board of water commissioners, and where they consider it necessary they may attach a meter to determine the quantity used. Wherever a meter is used, if rate for use of water is less than $25 per annum the consumer shall be charged as rent of the

meter ten per cent. of the cost thereof, in addition to the water rent.

"Rule 13. The commissioners reserve the right at all times to shut off the water for repairs, extensions, or other necessary purposes of the works, for nonpayment of water rents, or for neglect or refusal to comply with the rules and regulations of the board. They also reserve the right in all cases to test the quantity of water actually supplied to any person or premises by the application of a meter, and to revise and adjust all contracts made for the use of water upon the basis of such actual quantity as the application of such test shall disclose."

The plaintiff is located in Waterbury, extensively engaged in manufacturing there, and necessarily a large consumer of water. This has been delivered to it in two mains laid in the public streets and owned by the city. They are connected with a large distribution pipe on the plaintiff's premises, owned by the plaintiff, which passes around its yard and is connected with its factory buildings, there being two connections with the main on one street and one connection with that on another street. The plaintiff has made eight connections with this distribution pipe, and at its own expense has supplied seven of these connections with a water meter upon each, for the purpose of ascertaining the amount of water used; one meter having been furnished by the city at its expense. Through six of the connections water is distributed through some of the rooms of the plaintiff's factory, each of these connections furnishing water to a separate building. Two of the connections furnish water to buildings so connected and metered, for the sole purpose of operating an elevator in each building, and are provided with a "recorder" for registering the amount of water used for such elevators. All the plaintiff's buildings are in one yard or inclosure, and are connected with each other. This land was acquired by the plaintiff from time to time, and the different buildings put up from time to time. Each of the meters and recorders installed by the plaintiff was put in for the convenience

and use of both parties in determining the quantity of water furnished.

For a long period prior to November 1st, 1902, the plaintiff paid all bills presented by the city for water furnished. It refused to pay bills presented on that day, and the city threatens to cut off the supply of water. The bills in dispute are six. Two were for the water supplied to the buildings provided with a " recorder " ; the rate for each building being determined by adding together the amount of water registered by the meter and recorder. Each of the other four bills was made up by applying the scale of prices and terms to water registered by a particular meter as if no other water had been furnished to the plaintiff ; that is, each of these bills is such as would have been made out if they had been against four different consumers.

The plaintiff claims that it was only liable for, and offered to pay, a less sum than that so charged : namely, one to be ascertained by applying the scale of prices and terms to the total quantity of water used upon its entire premises, as if it had passed through a single meter.

The city at its own expense employs inspectors to read water meters throughout the city monthly, and keeps a separate account upon its books with each meter. Each additional meter, therefore, entails additional expense upon the city, both in reading the meters and bookkeeping expense.

Briefly stated, the question in dispute is whether the lower prices chargeable to large consumers are to be determined, as to each, with reference to the number of buildings supplied or meters installed, when such buildings are in the same inclosure owned by one party and devoted to the same general use.

None of the bills presented included any charge for the rent of a meter, or for water supplied to any building in such quantity as not to call at the established rate for a payment of more than $5 a year. The total quantity supplied to all the buildings greatly exceeded a daily average of 10,000 gallons.

Scovill Mfg. Co. v. Kilduff, Mayor, et als.

The natural effect and probable object of the scheme under which the city graded its prices in proportion to the quantity of water used, was to encourage a large consumption. There is nothing in the established scale of prices and terms to indicate that, as to water supplied to a particular customer for consumption for one general purpose in a particular close, any distinction was to be made between one who used all that he took in a single building, and one who distributed it through several, provided in none of them were less used than would call for a charge of $5 a year, and in all of them enough were used to call for a charge of $25 a year. In either case, the quantity of water supplied remains the same. Nor is that affected by the consumer's installing a number of separate meters. If the city chooses to make use of the information which these may give, it gains an additional security against errors of registration; but nowhere in its published terms of supply is there any suggestion that every such meter can be made the subject of a separate bill computed on an independent basis.

It may be that a different rule would apply where water is furnished to separate closes owned by the same proprietor, or for different uses upon the same close; but in the case at bar the appellant was right in its claim made in the trial court, that the charge against it should have been made as if all the water used had been supplied through a single meter.

There is error, the judgment is set aside, and the cause is remanded for the entry of a judgment in favor of the appellant.

In this opinion the other judges concurred.